S. W. FORDYCE AND A. H. SWANSON, RECEIVERS, v.
JEFF D. YARBOROUGH.

No. 27.

1. **Defective Charge.**—A charge which in substance informs the jury that if defendants were guilty of negligence in allowing the coupling which caused the injury to become defective, and appellant was injured while coupling the car, without negligence on his own part, that he might recover, is defective for not adding the further fact essential to a recovery, that the injury must have resulted from the defective condition of the coupling.

2. **Extra Hazards.**—When a charge is given upon the subject of the liability of the master for negligent failure to inform the servant of the extra hazards arising from the use of a car of more than ordinarily dangerous construction. the jury must also be informed that the failure of the master to perform his duty in this respect must have proximately caused the injury; there is nothing in this case to warrant the court in assuming these facts to be established.

3. **Latent Defects.**—The master would not be liable for injury caused by latent defects in the car, unless by the exercise of proper care he ought or could have known of those defects: therefore, the following charge was erroneous: " If the defect in the car was latent, and not known to the plaintiff, and could not be known by the exercise of ordinary care, then the duty was on the master to acquaint him with the defect. if any exists."

4. **Same.**—There was testimony that, after the accident, the spring of the drawhead was found defective, and some of the castings about it were broken, and this was the only evidence tending to show latent defects. If these defects existed at the time appellee was hurt, and appellants knew or with proper care ought to have known of them, then their duty was to repair them, and their failure to inform appellee of these defects would neither increase nor diminish their liability.

5. **Special Charges Asked.**—The third special charge asked by appellants embraced three distinct propositions, two of which had been sufficiently given in the general charge.   The third proposition was, " That if the plaintiff knew that the drawhead was defective, or if the defects were open and visible, and he failed to notify defendants of the danger of the same, and without objection and protest continued in defendants' service, he would be presumed to have assumed the risk incident to the defects." If it had been embodied in a separate request, it would have been proper for the court to give it; but in asking charges parties ought not to so connect propositions contained in the general charge with others not given as to make it necessary for the court to unduly repeat the same instruction.

6. **Charge Approved.**—The fourth charge asked by appellants, as found in the statement of the case, was approved.

7. **Master Instructing Servant.**—No question as to the duty of the master to instruct the servant as to his general duties was properly involved in this case, and an instruction was properly refused which charged that appellee, in accepting employment. assumed to understand the service, and to be competent to discharge the duty of brakeman, unless the evidence shows that in the contract of employment defendant assumed to instruct him with reference to his duty and the dangers incident to the service.

8. **Rules of Company.**—A rule of appellants provided: " Great care must be used in coupling and uncoupling cars.   Do not go between cars unless they

are moving at slow and safe rate of speed. nor attempt to make any coupling unless the drawbars and other coupling appliances are known to be in good order." This charge was asked: " If plaintiff did not use great care in making the coupling. or went between the cars when the same were not going at a safe rate of speed. or attempted to make the coupling when the drawbars or other coupling appliances were not known to plaintiff to be in good order. he can not recover." The charge was properly refused. The duty of the appellants being to furnish cars with reasonably safe coupling appliances, in good order. appellee had the right to assume that this duty had been performed until he knew, or ought to have known, the contrary. It was not his duty to examine or inspect the attachments of the car, but the master's, so far as its performance was involved in the care required of him. The latter part of the charge, which requires the servant to know that the coupling appliances are in good order before going between the cars, was not the law of the case.

Appeal from Smith.    Tried below before Hon. Felix J. McCord.

The plaintiff was a brakeman, and was injured while making a coupling between the engine (which was backing at the rate of from two to four miles per hour) and a box car, which was standing on a side track.

The drawhead of the car gave way and went back under the car, and the plaintiff was caught between the car and the rear end of the tender of the engine, and injured. The car was differently constructed from the cars generally in use. The railway company had other cars like the one by which the plaintiff was injured, but plaintiff had handled only this one. The evidence is voluminous, but enough has been stated and will be found in the opinion of the court to elucidate the opinion. The fourth charge asked by the defendants is as follows:

" You are charged that neither individuals nor corporations are bound as employers to insure the absolute safety of the machinery or mechanical appliances which they provide for the use of their employes; nor are they bound to employ the best and the newest of these appliances for the purpose of securing the safety of those who are thus employed. They are only bound to use reasonable care and prudence for the safety of those in their service, by providing them with machinery reasonably safe for the use of the latter; and where an employer fails in this duty of precaution and care, he is responsible for any injury which may happen by reason of defects in machinery which were or ought to have been known to him, and were unknown to the servant. But if the servant knew of the defect in the machinery, or the defects were obvious and open to observation, in which case he would be presumed to know them, and yet remained in the service and continued to use the machinery without giving any notice thereof to the master, he would be deemed to have assumed the risks of all danger reasonably to be apprehended to such use, and is entitled to no recovery. And if the servant may have been wanting in such reasonable care and prudence as would have apprehended the happening of the accident, he is guilty of contributory negligence, and the master is thereby

absolved from responsibility for the injury, although it was occasioned by the defect of the machinery through the negligence of the master."

*Finlay, Marsh & Butler*, for appellants.— 1. The fact that the master furnishes to the servant defective machinery, or appliances differently constructed and more hazardous than those in customary use, of which the servant is ignorant, and that the servant while using such machinery or apparatus, using proper care, is injured, is not per se sufficient to render the master liable to the servant for injuries so received by him, but the master can only be chargeable when the defects in the machinery are the proximate cause of the injuries. Railway v. McAtee, 61 Texas, 695; Cool. on Torts, 68; 2 Thomps. on Trials, sec. 1676.

2. Although machinery furnished by the master to the servant may be of peculiar and unusual construction, with which the servant is unacquainted, and in the use of which he is injured, still the master would not be guilty of negligence in failing to notify the servant of such construction, unless he knew or ought to have known that the danger to the servant in the use of said machinery was thereby increased and rendered more hazardous. Railway v. McCarthy, 64 Texas, 632; Wood Mast. and Serv., secs. 344, 345; Pierce on Rys., 370; Cool. on Torts, 556.

3. Where the master knows, or in the exercise of ordinary care ought to know, of any latent defects in machinery, it is his duty to warn the servant of them; but in no case can the master be held chargeable for an injury resulting to his servant from latent defects in the machinery, unless negligence or fault can be imputed to him. Railway v. Bell, 75 Texas, 50; Railway v. Lyde, 57 Texas, 507; Railway v. Oram, 49 Texas, 341; Railway v. McAtee, 61 Texas, 695; Railway Acc. Law, 300; Wood Mast. and Serv., secs 344, 345; Humphrey v. Railway, 39 Am. and Eng. Ry. Cases, 363; Hudson v. Railway, 41 Am. and Eng. Ry. Cases, 348.

4. The servant assumes all risk of latent defects in machinery and appliances unknown to the master, unless the master was negligent in not discovering the same, and the question whether or not a defect was discoverable is for the jury. Railway v. Crenshaw, 71 Texas, 340; Railway v. Silliphant, 70 Texas, 623; 14 Am. and Eng. Encyc. of Law, 844; Wood Mast. and Serv., sec. 345; Ballou v. Railway, 54 Wis., 157; Steffen v. Railway, 46 Wis., 265; Railway v. Tay, 91 Ill., 474; Packing Co. v. Hightower, 92 Ill., 139; De Graff v. Railway, 16 N. Y., 125; Baker v. Railway, 95 Pa. St., 211; Rummell v. Dillworth, 111 Pa. St., 343; Bunnell v. Railway, 29 Minn., 305; Leahy v. Railway, 65 Cal., 150.

5. A servant who remains in the service, knowing of a defect in machinery used by him without giving notice thereof, assumes the risk of injury therefrom, and he will be presumed to know of defects which are obvious and open to inspection. Rogers v. Street Railway, 76 Texas, 502; Railway v. Bradford, 66 Texas, 732; Railway v. Lempe, 59 Texas,

19; Railway v. McDade, 135 U. S., 570; 14 Am. and Eng. Encyc. of Law, 845, 846, and authorities cited in notes.

6. The master does not warrant the safety of his machinery, nor is he bound to employ as to his servant the latest and most approved machinery, but only such as is suitable; and if the servant knows or ought to know of the defective condition of the machinery, and continues to expose himself to danger from it, even in the necessary execution of his duties, he assumes the risk, and can not charge the master with damages resulting to him from such exposure. Railway v. Doyle, 49 Texas, 190; 14 Am. and Eng. Encyc. of Law, 892; Railway Accident Law, 301, 302; Railway v. Smithson, 45 Mich, 212; Whitman v. Railway, 58 Wis., 408; 21 Am. and Eng. Ry. Cases, 633; Railway v. Flanigan, 77 Ill., 365.

7. Though the master negligently furnish to his servant defective machinery, in the use of which the servant is injured, still the master is not liable for damages to the servant where the proximate cause of the injuries was the negligence of the servant in the use of the machinery. Murray v. Railway, 73 Texas, 2; 13 Am. and Eng. Encyc. of Law, 861; 2 Thomp. on Neg., 1104 (notes), 1146; Cool. on Torts, 563; Buzzell v. Mfg. Co., 77 Am. Dec., 212 (note), 218.

8. The master has the right, and it is his duty, to adopt reasonable rules and regulations for the management of his business and the safety of his servants, and where the servant is injured by reason of his performing the duties assigned him in violation of such rules and regulations, the master is not liable to respond to him in damages. Railway v. Wallace, 76 Texas, 636; Railway v. Ryan, 69 Texas, 665; Pilkinton v. Railway, 70 Texas, 226; Beach Con. Neg., sec. 141; Railway v. Rice, 11 S. W. Rep., 699; Alexander v. Railway, 83 Ky., 590; Railway v. Prabst, 83 Ala., 518.

*Ben C. Cain* and *J. M. Herndon,* for appellee.— 1. An employe is not bound by rules of which he is ignorant and which have never been brought to his notice by the employer. Railway v. Lamothe, 76 Texas, 220; Carroll v. Railway, 41 Am. and Eng. Ry. Cases, 307.

2. Appellee was injured by a defective car which was faulty in its original construction. Appellee had never seen the car before and did not know of the defect, and it was not easily perceived without examination or inspection for that purpose, but was generally known to be dangerous by the employes, and could with reasonable diligence have been known to the defendants, and defendants were therefore liable. Railway v. Fredericks, 71 Ill., 294; Gibson v. Railway, 46 Mo., 163.

3. It was not the duty of appellee as a brakeman to inspect the car, but this duty devolved upon the defendants, and the defect being such as must have been seen from an inspection of the car, and which defend-

ants must have known, they were liable. Railway v. O'Fiel, 78 Texas, 486.

4. In coupling the car appellee had a right to assume that the car was in good condition, and he was not bound to stop and look to see whether or not the drawhead and coupling apparatus were safe. King v. Railway, 14 Fed. Rep., 277; 8 Am. and Eng. Ry. Cases, 119; 4 Am. and Eng. Encyc. of Law., 428.

WILLIAMS, Associate Justice.—Appellants' first, second, and third assignments of error complain of errors in the charge of the court below. The portion of the charge first complained of is, in substance, that if appellants were guilty of negligence in allowing the coupling apparatus of the car that caused appellee's injury to become defective, and if appellee, without negligence on his own part, while coupling the car was caught between the cars and injured, defendants would be liable.

This charge was erroneous in not including in the enumeration of the facts essential to a recovery the further fact that the injury must have resulted from the defective condition of the coupling apparatus.

The same error occurs in the two paragraphs of the charge in which is defined the liability of the master for negligent failure to inform servants of extra hazards to arise from the use of a car of an unusual and more than ordinarily dangerous construction. In neither instruction is the fact that the failure on the part of the master to perform his duty in this respect must have proximately caused the hurt to appellee made one of the conditions of his liability.

It can not be said that the evidence so conclusively showed that appellee was hurt by a defect in the coupling appliances of the car, or as the result of a failure of appellants to warn him of the unusual danger incident to the act of coupling it, as to warrant the court in assuming these facts to be established. The instructions should have been so shaped as to leave it to the jury to find whether or not either or both of them were proven.

The charge in previous parts stated the case as one in which the plaintiff sought to recover for injuries received by reason of a " defective car" and " defective machinery," and instructed, in substance, that if plaintiff's injury was caused by a defective car, defendants would be liable, if the other facts essential to a recovery were shown; and it is claimed that this cured the errors in the subsequent and more specific directions. But the jury were not told here or elsewhere in the charge that appellants would not be liable if the defect did not proximately cause the injury, and the instructions complained of in effect charge them that liability would attach without proof of that fact. By the fifth special charge asked by appellants and refused by the court, the proposition that the alleged defect in the drawhead must have proximately caused the injury

before liability could arise therefrom, was requested as the law of the case.

As this rule was nowhere contained in the charge, it should have been given.

The nineteenth assignment of error is, that the court erred in instructing that "if the defect in the car was latent and not known to plaintiff, and could not be known by the exercise of ordinary care, then the duty was on the master to acquaint him with the defect, if any exists."

The master would not be liable for an injury received by the servant from a latent defect in the car, unless by the exercise of proper care the master ought to have known of its existence. If he did know of its existence, or if he with proper care could have known it, his duty would be to remedy it rather than to warn the servant. He might escape liability by acquainting the servant with the fact, if the latter continued in the service and assumed the risk. But we can not see that this instruction had any proper application to the facts of the case.

There was testimony that the spring of the drawhead was defective, and that some portions of the castings about it were broken at a date subsequent to appellee's injury. These are the only particulars in which the evidence tended to show defects which might in any sense be considered latent. If these defects existed at the time appellee was hurt, and the facts showed that appellants knew or with proper care ought to have known of them, their duty was, as before stated, to repair them; and their failure to inform appellee of these conditions could neither increase nor diminish their liability. It was claimed that the car was defectively constructed in its coupling attachments, and whether it was or not was properly left to the jury. But the imperfections which were claimed to exist other than those just mentioned were not latent defects.

The third special charge asked by appellants embraced several distinct propositions: First, that it was plaintiff's duty to have acquainted himself with the general duties of the position. Second, that he assumed at his peril the dangers and risk naturally and usually incident to his employment, including the dangers and risk of such defects as were reasonably open to his ordinary inspection under the circumstances. Third, that if he knew that the drawhead was defective, or if the defects were open and visible, and failed to notify defendants of the danger of same, and without objection and protest continued in defendants' service, he would be presumed to have assumed the risk incident to the defects.

The court in its general charge gave sufficiently the substance of the first two rules. The effect of the third could be inferred, perhaps, from the language used in the general charge, and in another special instruction given at request of appellant. But the rule there laid down is nowhere pointedly given to the jury. If it had been embodied in a separate request it would have been proper for the court to give it. But

in asking special charges parties ought not to so connect propositions contained in the general charge with others not given as to make it necessary for the court to unduly repeat the same instruction.

It can be easily perceived how such a practice would lead to serious irregularities, but if there were no other ground for reversal, we would not feel justified in holding this to be an error.

The fourth charge requested should have been given. It stated correctly the law, and the several propositions it contains were not given in the charge with such distinctness as to render it unnecessary.

The fifth requested instruction, we have already seen, was improperly refused. Both propositions in it announced law directly applicable to the facts.

The sixth and thirteenth special charges were both properly refused. The sixth was, that appellee in accepting employment assumed to understand the service, and to be competent to discharge the duty of brakeman, unless the evidence shows that in the contract of employment defendant assumed to instruct him with reference to his duty and the dangers incident to the service.

No question as to the duty of the master to instruct the servant as to his general duties was properly involved in the case. It was claimed, however, by appellee, that the car by which he was hurt was of an unusual make and caused extra danger to him in coupling it, and the duty of appellants to warn him of the danger to result from the use of such car was in question. Such an instruction as that requested might easily have been misapplied by the jury as controlling this issue.

The thirteenth requested instruction was based upon a rule of appellants, as follows: "Great care must be used in coupling and uncoupling cars. Do not go between cars unless they are moving at a slow and safe speed, nor attempt to make any coupling unless the drawbars and other coupling appliances are known to be in good order."

The special charge requested the court to charge the jury, that if plaintiff did not use great care in making the coupling, or went between the cars when the same were not going at a safe rate of speed, or attempted to make the coupling when the drawbars or other coupling appliances were not known by plaintiff to be in good order, plaintiff could not recover.

The court had charged in effect that appellee was bound to know the rules of appellants, and that if his injury resulted from his failure in this respect he could not recover, and that his inability to read would not exempt him from this duty.

There was evidence that appellee could not read well, and did not know of the rule in question.

It was the duty of appellants to furnish cars with reasonably safe coupling appliances in good order, so far as the exercise of ordinary care

would enable them to do so.    Appellee had the right to assume that this duty had been discharged, and that the couplings of the car were in proper order, until he knew, or by the exercise of ordinary care ought to have known, the contrary.    It was not his duty to examine or inspect the attachments of the car, but this duty the law devolved upon the master, so far as its performance was involved in the care required of him.    The effect of the instruction requested, if not of the charge actually given, was to reverse the positions of the master and servant in this respect.

It imposed upon the servant a duty not warranted by law.

The first part of the rule contains cautions which it would doubtless be the duty of the servant to observe without a rule.    But the latter portion, which requires the servant to know that the coupling appliances are in good order before going between the cars, should not be given as the law of the case.

The sixteenth assignment brings into question the insufficiency of the evidence to sustain the verdict.

We can not say that there is not enough evidence in the case to sustain a verdict for appellee, though on several points it is quite debatable.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*