GALVESTON, H. & S. A. RY. CO. v. SAUNDERS.

(Court of Civil Appeals of Texas. Galveston. Nov. 25, 1911. On Motion for Rehearing, Dec. 21, 1911.)

1. TRIAL (§ 296*)—INSTRUCTIONS—CURE OF ERROR.

In a suit against connecting live stock carriers for injury to a shipment under bills of lading limiting the liability of each carrier to its own line, an instruction that the measure of damages as to injured cattle was the difference between the reasonable market value of the cattle at the destination as they were and as they would have been, if they had been properly handled, and an instruction that the measure of damages for cattle which died in transit was their reasonable market value at the destination at the time and in the condition they would have arrived, had they not died, were not erroneous, as to the initial carrier, as holding that carrier for injuries occurring after the shipment left its line, where instructions on the issue of liability limited the carrier's liability to its own line.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 705–718; Dec. Dig. § 296.*]

2. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—INSTRUCTIONS.

In an action against carriers for injury to a live stock shipment, any error in an instruction authorizing recovery if defendants were negligent, and if "by reason thereof" the cattle were injured, instead of requiring a finding that the injury was "proximately caused" by the negligence, was harmless.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219–4224; Dec. Dig. § 1064.*]

3. CARRIERS (§ 227*) — LIVE STOCK — INJURY TO SHIPMENT—PLEADING—SUFFICIENCY.

A petition against carriers for injury to a live stock shipment, describing the property as "499 head of cattle from 3 to 10 years old," and, further, as "said live stock," sufficiently described the property.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 953–956; Dec. Dig. § 227.*]

4. JURY (§ 136*)—PEREMPTORY CHALLENGES —NUMBER—CODEFENDANTS.

Where connecting carriers made a common defense to the same attorneys at suit for injury to live stock in transit, and did not require separate jury lists, it was not error to limit the number of their peremptory challenges to six between them.

[Ed. Note.—For other cases, see Jury, Cent. Dig. § 609; Dec. Dig. § 136.*]

5. EVIDENCE (§ 543*)—EXPERT OPINIONS— QUALIFICATIONS—MARKET VALUE OF CATTLE.

Witness was properly permitted to testify to the market value at their destination of cattle injured in transit, though he did not expressly state that he was acquainted with such market value at that point, where it appeared that he had been engaged in the live stock business more than 20 years, and had a ranch near the destination, and testified to the market value of the cattle at the destination in

the condition in which they should have been delivered.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2356½–2358; Dec. Dig. § 543.*]

On Motion for Rehearing.

6. APPEAL AND ERROR (§ 216*)—RIGHT TO COMPLAIN—INSTRUCTIONS.

One cannot complain of the omission of the trial court to instruct on a certain point, where an instruction thereon was not requested in the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627–641.]

7. APPEAL AND ERROR (§ 730*) — ASSIGNMENTS OF ERROR—REVIEW.

Under an assignment of error to omission to instruct on a certain point, the Court of Civil Appeals cannot review refusal of an instruction on that point, where reference to the refused charge in the assignment and in the statement thereunder is merely incidental to the assignment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. § 730.*]

---

Appeal from District Court, San Patricio County; E. A. Stevens, Judge.

Action by J. C. Saunders against the Galveston, Harrisburg & San Antonio Railway Company and another. Judgment for plaintiff, and the named defendant appeals. Affirmed.

Baker, Botts, Parker & Garwood, Berry & Kleberg, and Robt. W. Stayton, for appellant. Dougherty & Dougherty and John D. Wheeler, for appellee.

REESE, J. This is an action by J. C. Saunders against the Galveston, Harrisburg & San Antonio Railway Company and the San Antonio & Aransas Pass Railway Company to recover damages to several car loads of cattle, amounting to 499 head, shipped by plaintiff from Spofford, Tex., to San Antonio over the line of the Galveston, Harrisburg & San Antonio Railway, and over the line of the San Antonio & Aransas Pass Railway from San Antonio to Falfurrias, Tex., in November, 1909. The cattle were delivered by the shipper to the Galveston, Harrisburg & San Antonio Railway, and carried by it to San Antonio, where they were delivered to the San Antonio & Aransas Pass Railway, by which they were carried to Falfurrias. Each line issued a separate bill of lading, providing that it should not be liable for damages caused by the connecting line. It was alleged that some of the cattle were killed en route, and others injured, by reason of the negligent handling of the cars; the total damages claimed being $2,500. Upon the trial the court instructed the jury to return a verdict for the San Antonio & Aransas Pass Railway Company, and submitted the issues as against the Galveston, Harrisburg & San Antonio Railway Company. The jury returned a

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

verdict in favor of the San Antonio & Aransas Pass Railway Company and against the Galveston, Harrisburg & San Antonio Railway Company for $1,947, upon which judgment was rendered. The latter defendant filed a motion for a new trial, which was refused, and brings the case to this court on appeal.

We find from the evidence that the cattle referred to (499 head) were delivered by appellee to appellant on November 22, 1909, at Spofford, Tex., for transportation to San Antonio, and a bill of lading issued, containing the provision that the carrier should not be liable for damages beyond its own line; also allowing free transportation to the shipper and another person, who were to look after the cattle en route. The cattle were loaded in 17 cars, and left Spofford about noon on the 22d of November, arriving at San Antonio about 9 hours thereafter. They were there unloaded at the Union Stockyards, and were delivered to the Aransas Pass Railway during the night. The latter company issued a bill of lading with similar provisions to that issued by the initial carrier, providing for carriage from San Antonio to Falfurrias, and upon this bill of lading the cattle were carried from San Antonio to Falfurrias, leaving early on the morning of the 23d, and arriving at Falfurrias the afternoon of the same day. Thirteen of the cattle were dead when they got to San Antonio, and of the remainder three were dead when they reached Falfurrias. A great many of them were injured. The evidence is sufficient to authorize the finding of the jury that the value of the cattle killed, and the damages to the remainder caused by injuries received, was $1,970, the amount of the verdict; that these damages were the proximate result of the negligent handling of the cattle by the appellant between Spofford and San Antonio; and that appellee was not guilty of negligence, either in attention to the cattle en route, or in undertaking to ship the cattle in such impoverished and weakened condition as that they were not able to stand the hardships of carriage, if properly handled. One of the defenses pleaded was that the cattle were poor, weak, and unable to withstand the ordinary hardships of railway transportation, and that what injuries they received were proximately caused by this fact. This issue was submitted to the jury by appropriate instructions, and found against appellant. The evidence was sufficient to support the finding.

[1] By its first assignment of error, appellant complains of that portion of the charge wherein the jury is instructed that if they find for appellee the measure of damages would be the difference, if any, between the reasonable market value of the cattle in Falfurrias upon arrival in the condition in which they were, and what such reasonable market value would have been if they had been properly handled. The objection to this portion of the charge, as stated in the proposition under the assignment, is, in substance, that it charged appellant with damages for injuries to the cattle after they left its line. It will be noticed that the charge is not on the issue of liability, but only on the measure of damages. In charging upon the issue of liability, the jury was instructed, in paragraph 6 of the charge, that appellant could only be held liable for such damages as were caused between Spofford and San Antonio by negligent handling, while the cattle were in its custody, by appellant. Further, in paragraph 11, the jury was instructed as follows: "You are also instructed that if you believe from the evidence that said cattle were damaged while in transit, and that such damage was not occasioned through the negligence of defendant, the Galveston, Harrisburg & San Antonio Railway Company, then you will find for the defendant, the Galveston, Harrisburg & San Antonio Railway Company; or, if you believe from the evidence that such damage, if any, was proximately caused by the inherent nature, vice, or natural propensity or condition of said stock, then you are instructed that, as to any damage proximately caused by such inherent nature or natural propensity or condition, plaintiff would not be entitled to recover."

No complaint is made by appellant of the charge to return a verdict for its codefendant, which was represented by the same counsel. The evidence was sufficient to show that the cattle were properly handled by the Aransas Pass Railway Company, and that the injuries were the proximate result of the rough and negligent handling of the cars while being hauled from Spofford to San Antonio. It is true that the cattle might have suffered injury between San Antonio and Falfurrias, not due to the negligence of the Aransas Pass, and for which neither road would be liable; but the jury could not, under the instructions given, have charged appellant with such damages. The objection to the charge cannot be sustained.

By the second assignment, objection is made to the following portion of the charge: "As to the cattle that died in transit, if you believe that defendants, or either of them, are liable to plaintiff therefor, under these instructions, then the measure of damage as to such cattle would be the reasonable market value of same at Falfurrias, Tex., at the time and in the condition they would have arrived there, had they not died in transit." This charge, also, is not on the issue of liability, but the measure of damages solely; and, in view of the charge on the issue of liability heretofore referred to, the jury could not have understood that appellant could be charged for the value of such cattle as died between San Antonio and Falfurrias, unless their death was proximately caused by the rough handling on ap-

pellant's line between Spofford and San Antonio. The use of the words "defendants, or *either* of them" as they occur in the charge was a careless inadvertence, inconsistent with the express instruction that the Aransas Pass was not liable, and somewhat confusing; but, in view of the clear and positive instructions elsewhere in the charge, confining appellant's liability to such damages as occurred on its own line, we do not think that the jury could have been misled thereby.

[2] By the third assignment, appellant complains of that portion of the charge wherein the jury is instructed that if they believed that appellant "roughly handled said live stock, and the cars in which same were being transported were jolted and jarred; and you further believe that in so doing it was negligent; and you further believe that, *by reason thereof*, plaintiff's cattle were injured as alleged in plaintiff's petition; and you further believe that *by reason thereof* plaintiff suffered damage," etc. The objection to the charge is that it did not instruct the jury that, in order to render appellant liable, it was necessary that the injury and damage to the cattle must have been proximately caused by the negligence of appellant. It must be remarked here that very little care would have sufficed to have relieved the charge of even the semblance of error on this point, and avoided the assignment; but we do not think the charge as given presents affirmative error. The charge must be taken as a whole. The jury was instructed in positive and unmistakable language that appellant could not be held liable for any injury or damages caused by the weakened condition of the cattle and their unfitness for shipment, or by the negligence of those who accompanied the shipment to look after the cattle for appellee. If the cattle were injured while being transported, and such injury was not caused by their weak and unfit condition, nor the negligence of the shipper's agents, but such injury occurred *by reason of* the negligent handling by appellant, then such negligent handling must have been the proximate cause of the injury. In such case there is no room for a distinction between "caused" and "proximately caused." The language of the charge, "by reason of," has the same meaning to an ordinary jury as "caused by." They must have so understood it, and if the injury was "caused by" it must have been "proximately caused by" the negligence of appellant. At least, the charge does not present affirmative error. If appellant desired that the very nice distinction between cause and proximate cause should be explained to the jury, a special instruction should have been requested. If any such instruction was requested, there is no assignment of error based upon its refusal. We do not understand that anything we have said on this point is inconsistent with the holding in Receivers v. Yarborough, 1 Tex. Civ. App. 260, 21 S. W. 421, and Railway Co. v. Williams, 39 S. W. 967, cited by appellant.

The fourth assignment of error is without merit. The court instructed the jury in paragraph 12 of the charge that if the cattle were injured while being transported, but such injuries "were caused or contributed to in whole or in part through the negligence of plaintiff or his agents, while transporting the cattle," plaintiff would not be entitled to recover for such damages, even though the negligence of defendant was a concurring cause thereof.

[3] In view of the allegations of the petition, in which the property is described as "499 head of cattle from 3 to 10 years old," and further therein referred to as "said live stock," there is no merit in appellant's complaint of the ruling of the court in overruling certain exceptions to the petition that the property was not sufficiently described. The fifth assignment of error, presenting this objection, is overruled.

[4] Upon the trial, preliminary to the selection of the jury, one jury list was made out for plaintiff and another for both the defendants. Defendants did not request separate jury lists, one for each defendant. They were represented throughout the trial by the same counsel. In striking from this list by both defendants, nine persons were stricken as objectionable. After this was done, counsel was informed by the court that defendants would not be allowed more than six peremptory challenges between them, and were required to cancel three of the challenges, which was done, the result of which was that three of the jurors stricken as objectionable to one or the other of the defendants were sworn on the jury. To this action of the court in not allowing each defendant six peremptory challenges, appellant objected, and reserved a bill of exceptions, and the objection is presented by the sixth assignment of error.

The bill of exceptions is signed by the judge with the following explanation: "After the jury for the week, numbering 23 qualified jurors, were impaneled, the case was called for trial, and thereupon a jury list containing the names of all said jurors was furnished to plaintiff, and a like list was furnished to the defendants. The two defendants were at that time and throughout the trial of the case represented by the same counsel, and it appeared that there was no conflict of interests between the two defendants, and they acted together, through the same counsel, throughout the trial in a common defense."

It further appears from the record that the defendants filed separate answers, which are substantially identical; each setting up the same defenses; each denying that the cattle were injured by its negligence, or that of its codefendant; and each expressly deny-

ing its own liability or that of its codefendant. The answer of each prays, in conclusion, as follows: "And, in the event that judgment goes for any amount against it, defendant prays judgment over against its codefendant in said amount." Both of these answers were signed by the same attorneys.

It is a sufficient answer to this assignment, in any event, that it is not made to appear that this appellant suffered any injury by reason of the action of the trial court. Snow v. Starr, 75 Tex. 411, 12 S. W. 673; Waggoner v. Dodson, 96 Tex. 7–17, 68 S. W. 813, 69 S. W. 993; Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772. Appellant and its codefendant were furnished one list, to which no objection was made. Attorneys representing both undertook to challenge peremptorily nine of the jurors named. It does not appear which were objectionable to appellant and which to its codefendant. Three of these challenges were denied by the court, leaving six. It does not appear but that these six are the same persons who were objectionable to and challenged by appellant. For all that is shown, appellant exercised its right of challenge in striking out these six names.

But for another reason we do not think the court erred in the matter. Appellant's position now is that it was interested in showing that, if any injury occurred by the negligence of either party, it was done by its codefendant. The Aransas Pass presumably was making the same contention. How could the same attorneys, acting for both parties, consistently and properly represent the interests of both defendants? That a man cannot serve two masters, if their interests are antagonistic, is not only good morals, but hornbook law. We cannot think that the eminent attorneys who represented both defendants in this case intended to put themselves in any such position. We must conclude that there was no real antagonism between the defendants, but that they were making a common defense, and were, in law, one party, so far as the right of challenge is concerned. In the circumstances of this case, it would have given appellant an unfair advantage to have allowed it and its codefendant more than six peremptory challenges. The assignment must be overruled.

[5] There is no merit in the seventh assignment, which is overruled. We think the court did not err in allowing the witness Saunders to testify as to the market value of the injured cattle, over the objection that it was not shown that he had sufficient knowledge of such market value at Falfurrias. The witness, without saying directly that he was acquainted with the market value of the injured cattle at Falfurrias, showed by his testimony that he was qualified to testify as to that fact. He was by occupation a stockman, and had been engaged in that business all his life. He had been handling and shipping cattle 23 years, and for several years had been buying and selling cattle. He had a ranch in Starr county, in the neighborhood of Falfurrias. He testified that he knew the market value of these cattle at Falfurrias in the condition in which they should have been delivered. It reasonably follows that he had sufficient knowledge of the market value of the injured cattle to qualify him to testify thereto. Appellant did not attempt to cross-examine or contradict him on this point.

We find no error in the record requiring reversal of the judgment, and it is affirmed.

Affirmed.

### On Motion for Rehearing.

[6, 7] On motion for rehearing, appellant insists, with much force, that we erred in our ruling upon its fourth assignment of error. It is insisted that the twelfth paragraph of the court's charge on the negligence of appellee's agents in charge of the cattle, in so far as such negligence caused or contributed to the injury to the cattle, as affecting the right of recovery, presents a different issue from that referred to in the assignment, which was not the negligence of such agents, but their failure to perform the contract obligation of appellee in this particular. There is some force in appellant's contention, as presented in the motion for rehearing; but we think it is sufficient answer to it that the assignment does not complain of any error of the trial court in refusing a requested charge on this issue, but of the omission of the trial court to charge on the issue. That this was not affirmative error is, we think, well settled. If appellant desired to avail himself of this omission, it should have requested a special charge, and, in case of its refusal, assigned error upon such refusal. It is true that in the assignment and in the statement thereunder in its brief reference is made to such requested charge, but merely incidentally to the assignment, which is based solely upon the failure or omission in the charge of the court. Under such assignment, we could not properly have considered any error there may have been in the refusal of the requested charge. It was held by the Supreme Court, in Searcy v. Grant, 90 Tex. 101, 37 S. W. 320, construing article 1018, R. S., that an appellate court would not take cognizance of any error, not assigned, unless it be fundamental, or an error apparent upon the face of the record. It will not be contended that this was such error.

With this addition to our opinion, the motion for rehearing is overruled. We must not be understood as holding that there may not be cases where the mere omission to present fundamental issues would be affirmative error.

Overruled.