### DALLAS RAILWAY & TERMINAL CO. v. AULTMAN et al.

### No. 14549.

Court of Civil Appeals of Texas. Dallas.

Nov. 7, 1952.

Rehearing Denied Dec. 26, 1952.

Burford, Ryburn, Hincks & Ford and Bruce Graham, Dallas, for appellant.

Irwin & Irwin, George Irwin, Chas. E. Long, Jr., and Lucian Touchstone, Dallas, for appellees.

CRAMER, Justice.

T. D. Aultman, Jr., and wife, Mildred L. Aultman (hereafter called Aultman) filed this suit in the District Court for damages for personal injuries to Mrs. Aultman while riding as a passenger on a Dallas Railway & Terminal Company (hereafter called Railway) Kessler bus, westbound on Commerce Street near the triple underpass in the City of Dallas, when said bus collided with the rear end of a truck owned by Packer Corporation of Texas (hereafter called Packer), when Packer's truck was making a stop at a changing signal light for traffic at said intersection. Aultman sued both Packer and Railway in the trial court, who each pleaded over against the

other for indemnity and contribution. At the conclusion of the evidence, the case was submitted to a jury, and, based upon the answers of the jury to special issues submitted, the court rendered judgment in favor of Aultman against Railway for the sum of $10,065.50 and in favor of Packer Corporation that no recovery be had against Packer. Railway filed its motion for new trial, setting up, among other assignments, improper argument on the part of Aultman's counsel in his opening argument, and in undue limitation by the trial court of Railway Company counsel's argument. After the amended motion for new trial was overruled, this appeal was duly perfected therefrom.

Railway briefs three points of error. Points 1 and 2 relate to Aultman's argument and complain of the trial court's overruling of its objection to the following:

"(1) If there was one single thing untrue about Dr. Jackson's testimony, one iota of it, why didn't they bring up the doctor? Why didn't they bring somebody to refute what evidence there was, that wasn't true? They had every opportunity in the world to do it and they haven't done it."

"(2) They sought to infer that she was not competent, but they did not come forth with any evidence that she was not competent. And they did not come forth with Dr. Loiselle to show that his findings were different from hers."

Aultman counters that the argument complained of " * * * is a fair comment and discussion of facts and issues raised and presented by the evidence, and is fully justified by the record * * *," and correctly overruled by the trial court.

The evidence which Aultman asserts justifies the argument was that the Railway's bus on which they were riding as farepaying passengers collided with the rear of Packer's truck, which threw Mrs. Aultman out of her seat and forward against a bar back of the operator and back against the seat where she had been sitting, causing her serious injury. Mrs. Aultman was conveyed by ambulance to Parkland Hospital in Dallas, where she was confined to a bed with boards under it, part of her body raised, other parts lowered, for eight days. Her pain was continuous when in the hospital and has never completely stopped. After leaving Parkland, she was confined to bed at home of her husband's mother for three weeks.

Mrs. Aultman was a part-time professional dancer, earning an average of $700 per year. Her work required great physical strength, agility, and skill. She will not be able to continue that work. Her witness, Dr. Fry, testified that he had been Mrs. Aultman's doctor for three or four years prior to the accident; he had examined her before the accident, at which time he found her pregnant but otherwise in good physical condition. He visited and examined her three times while she was at Parkland; examined her later, about April 20, and found that while she was 3½ months pregnant, the fetus in the womb was not developing,—or was dead. He delivered the dead fetus at St. Paul's Hospital on May 1; that the blow received in the accident was the reason for and brought about the delivery on May 1st. Aultman's witness, Dr. Ruth Jackson, testified to a thorough orthopedic examination and X-rays on May 10th; had examined Parkland's X-rays and had talked with Dr. Loiselle, resident orthopedic physician at Parkland, about Mrs. Aultman's condition.

In answer to hypothetical questions, Dr. Jackson testified that a blow such as Mrs. Aultman received in all probability caused the condition in her spine which the doctor called spondylolisthesis, and that there was a fracture of the articular process in the spine. That a spinal fusion operation was necessary and that such operation was a major one, costly and dangerous, to be followed by eight to twelve weeks in a cast, with total incapacity in all probability for at least one year, with permanent disability in her back thereafter of from 10 to 15 percent. Mrs. Aultman could not engage in any exercise requiring back-bending and strain to her spine; that such limitation would end Mrs. Aultman's professional dancing career. More than five months

prior to the trial Mrs. Aultman's deposition was taken by Railway and in her deposition she gave Railway permission to talk with Dr. Loiselle and Dr. Fry about her condition, and to examine her records at Parkland Hospital. Upon the trial, Railway did not introduce any medical evidence or testimony to refute or contradict the above. Mr. Graham, as a witness, testified that Mrs. Aultman's doctors were not at the trial, that Dr. Loiselle was not there; "And we do not consider Dr. Ruth Jackson her doctor."

Mrs. Aultman testified she did not know who called Dr. Loiselle. Mr. Aultman testified on cross-examination by Mr. Jensen, one of Railway's attorneys, that Dr. Murdock Fry was her doctor. Mrs. Aultman in her deposition testified she had no objection to Railway's checking with Dr. Loiselle with reference to her condition, "Or Dr. Fry, either one."

It also appears that Dr. Loiselle saw Mrs. Aultman daily while she was in the hospital and at times after she left the hospital. Neither Aultman nor Railway called or presented Dr. Loiselle as a witness, and neither made any explanation as to why he was not called.

The objection to the argument set out in these points was that the argument called for the jury's speculation as to testimony of an absent witness to support Aultman's case, in the face of the fact that the burden of proof was on Aultman, and Railway had no duty to present witnesses for the plaintiff; and there was no showing there was any doctor in the Railway's control who it could have brought to refute Dr. Jackson's testimony.

The trial court certified that the above argument was not in response to, or provoked by previous argument given by Railway's counsel; that there was no evidence introduced tending to show that there was any doctor who was in Railway's control that it could or could not have brought to court to refute Dr. Jackson's testimony. The argument, timely objected to by Railway's counsel, was not provoked by previous argument of its counsel, and was not in reply to argument of railway's counsel.

In our opinion the comment here is not supported by the record. It appears that the witness Dr. Loiselle was not the doctor of either party, but was on the staff at Parkland Hospital, the City-County Hospital; that he was not an employe of either party; that such information as he may have known about the case was acquired when he was called into the case by the doctors treating Mrs. Aultman; that he was as much available to one party as he was to the other at time of the trial. In our opinion the objection to the argument should have been sustained. Texas Emp. Ins. Ass'n v. Hicks, Tex.Civ.App., 237 S.W. 2d 699; 41 Tex.Jur. p. 782, Trial—Civil Cases, sec. 64.

We must therefore reverse the judgment below unless we can hold that, considering the record as a whole, the argument had no influence on the verdict. Hughes v. Belman, Tex.Civ.App., 239 S.W.2d 717, ref. n. r. e. We are of the opinion we cannot so hold. Points 1 and 2 are sustained.

Point 3 complains of error in the trial court's limiting Railway to 30 minutes argument after allowing Aultman 50 minutes for argument. The record shows that there were two defendants, and the court allowed 50 minutes to each side. However, divided the 50 minutes allowed defendants Railway and Packer, 30 minutes to Railway and 20 minutes to Packer. Although the limitation is on the border line, May v. Hahn, 22 Tex.Civ.App. 365, 54 S.W. 416; Mitchell v. Robinson, Tex.Civ.App., 162 S.W. 443, Id., Tex.Civ.App., 162 S.W. page 1172; Cooper v. Robischung Bros., Tex. Civ.App., 155 S.W. 1050, we cannot say it was harmless. The point, however, will not be present on a new trial, since no error has been asserted against Packer by either Aultman or Railway. Packer therefore will not be a party on the retrial of the case. Point 3 is sustained.

The judgment below is for the reasons stated reversed and remanded for a new trial as between Aultman and Railway, and as between Packer and Aultman, and Railway is affirmed.

Reversed and remanded in part, and in part affirmed.